## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **LONNIE E. BROWN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action Number** |
| **vs.** ) | **5:16-cv-428-AKK** |
| ) | |
| **EXPRESS SCRIPTS HOLDING** ) | |
| **COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Lonnie E. Brown filed his complaint against Express Scripts Holding

Company and fictitious parties in the Circuit Court for Jackson County, Alabama,

alleging state law claims for negligence, willful misconduct, and/or carelessness

arising out of the mail order pharmacy's alleged failure to timely dispense his

medication.[1] Doc. 1-2. Express Scripts later removed the action to this court under

28 U.S.C. § 1332. Doc. 1. Presently before this court and ripe for review is Express

Scripts' motion for summary judgment, docs. 20, 24, 26, which is due to be

granted.

---

[1] Generally, there is no fictitious party practice in federal court unless a plaintiff is able to specifically describe or identify the defendant. *See Richardson v. Johnson,* 598 F.3d 734, 738 (11th Cir. 2010); *New v. Sports & Recreation, Inc.,* 114 F.3d 1092, 1094 n.1 (11th Cir. 1997). Contrary to Brown's contention, he did not describe the defendants in his complaint or seek to amend his complaint to name these defendants prior to the expiration of the deadline for amendments. In light of Brown's failure to specifically describe or identify the fictitious defendants or move to amend his complaint prior to his response in opposition to the motion for summary judgment, *see* doc. 24, the claims against these fictitious parties are due to be dismissed.

# I.	STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in the non-moving party's favor when sufficient

competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

## II.    FACTUAL BACKGROUND

Brown suffers from seizures for which he takes the prescription medication Dilantin. Doc. 20-3 at 7. Brown's daughter, Julie Potter, helps him, at times, with his prescription medication. Doc. 20-4. On July 2, 2013, Brown began filling his seizure prescriptions with ESI Mail Pharmacy, Inc., a subsidiary of Express Scripts.[2] Doc. 20-1 at 14. Approximately six months later, ESI identified that Brown's medication was out of stock. Doc. 20-2 at 2. Around the same time, Potter noticed that Brown's medication was running low. On January 17, 2014 someone called ESI and unsuccessfully attempted to re-fill Brown's medication. Docs. 20-2

_____

[2] Express Scripts is a holding company for various legal entities, including ESI. Doc. 20-1.

at 3, 20-4 at 29. Two weeks later, Potter called to refill Brown's prescription and learned that ESI had received a new prescription from Brown's doctor that it could not process until the next day. Doc. 20-4 at 23. Potter called ESI on February 5, 2014 to inquire again about the medication, and learned that ESI had not yet processed the prescription and that Brown needed to visit his physician to obtain another prescription in the interim. Doc. 20-4 at 21. Indeed, that same day, Brown obtained a new prescription for a different dosage of his medication and filled it at a local pharmacy in his hometown. Doc. 20-1 at 8. Four days later, Brown suffered a seizure and hospital tests revealed no trace of Dilantin in his system. Doc. 20-3 at 28. He subsequently filed this lawsuit against Express Scripts for the failure to timely dispense his prescription.

## III.   ANALYSIS

Express Scripts argues that it is not a proper party to this action and that Brown has failed to plead the necessary elements of his negligence claim. The court agrees.

### A.  *Express Scripts is not a proper party to the action*

Based on its status as the holding company of ESI, Express Scripts argues that it is not a pharmacy and that it is not a proper defendant because it was not the dispensing pharmacy. Docs. 20 at 8, 20-1. Brown has offered no evidence to refute Express Scripts' contentions or to establish that Express Scripts has control over its subsidiary's business practices. Doc. 24 at 4. Instead, Brown asks the court to

"leave the Express Scripts Holding Company as a Defendant until it is shown by the Defendants that it is not merely another name for essentially the same people, places, and things as the subsidiary defendants." *Id.* at 4. The court disagrees because Brown has the burden of proving his claims, including that this defendant is liable for the conduct Brown challenges. Moreover, in essence, Brown wants to obtain discovery outside of the allotted period in order to attempt to pierce the corporate veil. The request runs afoul of the court's power to control its docket and to ensure that cases are disposed of in a timely manner. *See Equity Lifestyle Properties, Inc. v. Florida Mowing and Landscape Service, Inc.,* 556 F.3d 1232, 1240 (11th Cir. 2009). Critically, no basis exists for an extension at this juncture because Brown has known since Express Scripts answered this lawsuit that it contends that it does not dispense medications and is not a proper party to Brown's claims against its subsidiary, ESI. *See* doc. 4. To the extent that Brown disagreed with Express Scripts' position, he had ample opportunity to engage in discovery to obtain facts, if any, to establish Express Scripts' liability. *See* doc. 18.

Ultimately, under Alabama law, "a corporation is a distinct entity, to be considered separate and apart from the individuals who compose it." *Messick v. Moring*, 514 So. 2d 892, 894 (Ala. 1987) (internal quotations omitted). As such, a plaintiff must "first pierce the corporate veil before a parent company's liability may be established." *In re Birmingham Asbestos Litigation*, 997 F.2d 827, 830 (11th Cir. 1993). "Majority stock ownership, alone [ . . . ] is not sufficient for

piercing the corporate veil," *Simmons v. Clark Equipment Credit Corp.*, 554 So.2d 398, 400 (Ala. 1989), and "[p]iercing the corporate veil is not a power that is exercised lightly." *First Health, Inc. v. Blanton*, 585 So. 2d 1331, 1334 (Ala. 1991). Rather, at the very least, Brown must "show fraud in asserting the corporate existence or must show that recognition of the corporate existence will result in injustice or inequitable consequences." *Simmons v. Clark Equipment Credit Corp.*, 554 So. 2d 398, 400 (Ala. 1989). Brown has not made that argument nor has he made a sufficient showing to induce the court to pierce the corporate veil. Brown simply cannot defeat a motion for summary judgment with speculation after failing to engage in relevant discovery. *Cohen v. United American Bank of Cent. Fla.,* 83 F.3d 1347, 1349 (11th Cir. 1996) ("There is no genuine issue for trial unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor."). As such, summary judgment is due to be granted on this ground alone.

### B. Brown has failed to carry his burden under the Alabama Medical Services Liability Act

Alternatively, Brown's claims also fail on the merits. As pleaded, Brown has made a generalized claim for negligence and wantonness arising out of ESI's purported failure to fill his prescription medication in a timely manner. Doc. 1-2 at 6. A pharmacy is an "other healthcare provider" under the Alabama Medical Liability Act (AMLA). *See Ex parte Rite Aid of Alabama, Inc.,* 768 So. 2d 960

(Ala. 2000); *Cackowski v. Wal-Mart Stores, Inc.,* 767 So. 2d 319 (Ala. 2000); Ala. Code §§ 6-5-481(8) and 34-23-1. As such, Brown's claims against Express Scripts for ESI's conduct are governed by the AMLA, which applies "[i]n any action for injury or damages or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care." Ala. Code § 6-5-548(a). *See also Ex parte Addiction & Mental Health Services,* 948 So. 2d 533, 535 (Ala. 2006) ("the purpose of the AMLA is to regulate actions for alleged medical injury"") (internal quotations omitted); *Allred v. Shirley,* 598 So. 2d 1347 (Ala. 1992); *Benefield v. F. Hood Craddock Clinic,* 456 So. 2d 52, 54 (Ala. 1984). Under the AMLA, Brown has the burden of "proving by substantial evidence that the health-care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health-care providers in the same general line of practice ordinarily have and exercise in a like case." Ala. Code § 6-5-548(a). Accordingly, Brown must prove (1) the standard of care, (2) Express Scripts' deviation from that standard, and (3) a proximate causal connection between Express Scripts' act or omission constituting the breach and Brown's injury. *Giles v. Brookwood Health Servs., Inc.,* 5 So. 3d 533, 539 (Ala. 2008).

Brown has failed to establish these elements. As an initial matter, Brown has provided no expert testimony as to the standard of care applicable to an Alabama pharmacy and how Express Scripts purportedly breached that standard. *See Pruitt v. Zeiger*, 590 So. 2d 236, 238 (Ala. 1991). Moreover, Brown also failed to

establish causation by providing expert evidence that the lack of Dilantin likely caused his seizures. *See University of Alabama Health Services Foundation, P.C. v. Bush by and though Bush*, 638 So.2d 794, 802 (Ala. 1994) ("To prove causation in a medical malpractice case, the plaintiff must prove, through expert medical testimony that the alleged negligence probably cause, rather than only possibly caused, the plaintiff's injury."). In contrast, Express Scripts has provided two uncontested expert opinions[3] that the pharmacy acted within the standard of care, doc. 20-5 at 6, and that the seizures were probably caused by Brown's failure to comply with his medications or were the side effects of Brown's other

---

[3] Brown has not provided his own experts and does not dispute the qualifications of Express Scripts' experts. However, *Daubert* requires a court to serve as "gatekeepers" for the admissibility of expert opinion testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). "To warrant or permit the use of expert testimony, two conditions must be met: first, the subject matter must be closely related to a particular profession, business or science and not within the common knowledge of the average layman; second, the witness must have such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth." *Faircloth v. Lamb-Grays Harbor Co.,* 467 F.2d 685, 694 (5th Cir. 1972). The first of these conditions is easily met. The issues in this case involve the uses of medication in treating a patient with seizures and the standard of care used by a pharmacy in dispensing that medication. *See generally* doc. 1-2. These issues are outside the common knowledge of laypersons and require explanation by an expert to aid the court in its evaluation of the evidence. The second condition is also easily met: Dr. Ben Lucy, M.D. is a neurological hospitalist at the DCH Medical Center in Tuscaloosa, Alabama and has a practice that encompasses seeing patients and using the medication at issue in seizure prevention. Doc. 20-6 at 8. Dr. Lucy has practiced for over thirty years and has published numerous articles on neurological disorders, including seizures. *See* doc. 20-6 at 8–11. Dr. Lucy is, therefore, qualified to opine on medical causation as it relates to Brown's seizure. Michael Scalese is a licensed pharmacist employed as an assistant clinical professor at Auburn University. Doc. 20-5 at 9. As such, Michael Scalese is qualified to opine on the standard of care a pharmacy is required to adhere to in Alabama.

medications,[4] *see* docs. 20-6 at 4, 20-5 at 7. In light of Brown's failure to carry his burden under the AMLA, the motion for summary judgment is due to be granted.

## CONCLUSION AND ORDER

For the foregoing reasons, the motion for summary judgment, doc. 19, is **GRANTED**. This case is **DISMISSED WITH PREJUDICE.** Costs taxed against Brown.

**DONE** the 30th day of June, 2017.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[4] Brown has made a cursory challenge to the substance of the expert opinions, stating that the experts may have relied on improper documents and that their testimony might change if they had access to other information. *See* doc. 24 at 5. While an expert's opinion might change if she received different facts during cross examination, such speculation is insufficient to challenge the substance of these experts' opinions. Moreover, a review of the expert opinions shows that both reference the evidentiary materials Brown mentions, *see* docs. 20-6 at 12–13, 20-5 at 4–5, and that the expert opinions are related to two different issues—medical causation and the standard of care. The opinions do not contradict each other. To the contrary, both experts opined that Brown did not take his medication as instructed, docs. 20-5 at 7–8, 20-6 at 4, and that Brown had filled several other prescriptions at a local pharmacy prior to the date of his seizure indicating that he had access to a convenient method to obtain his medication, docs. 20-5 at 7, 20-6 at 6. Consistent with this opinion, Michael Scalese's testimony indicated that Brown's phenytoin (aka Dilantin) levels at the hospital were "inconsistent with him taking 300mg of phenytoin twice daily for approximately four days," doc. 20-5 at 7, which is consistent with Dr. Lucy's testimony that "[i]t is physiologically improbable that phenytoin would not be detectible in a patient taking 600mg of phenytoin for 4 or more days," doc. 20-6 at 4.